UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                              CASE NO.  8:02-CR-111-T-17MAP

GREGORY G. SCHULTZ,
et al.,
        Defendant(s).

_____/

ORDER

This cause is before the Court on:

Dkt. 937 Motion for Acquittal and Discharge
Dkt. 938 Motion for Acquittal
Dkt. 939 Motion for Acquittal
Dkt. 952 Response

Defendants Cuciniello, Tyrrell and Sinibaldi have moved for
judgments of acquittal and for discharge.  The United States of
Americas has filed a response which concedes that the Motions
should be granted as to certain counts, and objects to the
Motions as to other counts.  The Second Superseding Indictment
(Dkt. 577) in this case contains 38 separate counts.

I.  Standard of Review

In a motion for judgment of acquittal, the evidence at
trial must be viewed in the light most favorable to the
government, with all reasonable inferences and credibility
choices made in the government's favor.  See  United States v.
Keller, 916 F.2d 628, 632 (11th Cir. 1990), cert. denied, 499
U.S. 978 (1981).  The evidence need not exclude every reasonable
hypothesis of innocence or be wholly inconsistent with every
conclusion except guilt.  A jury is free to choose among

Case No. 8:02-CR-111-T-17MAP

reasonable constructions of the evidence.   See United States v. Ospina, 823 F.2d 429, 433 (11th Cir. 1987), cert. denied, 485 U.S. 964 (1988).

I.   Defendant Cuciniello

        As to Defendant Cuciniello, the United States of America concedes that the evidence presented is insufficient to sustain a conviction as to Counts 4, 6, 21 and 24.

        The United States of America argues that as to the remaining counts sufficient evidence has been presented for denial of Defendant's Motion.

        After consideration of the documentary evidence and the testimony of witnesses at trial, the Court finds that there is a wealth of evidence justifying the denial of Defendant's Motion for Acquittal on the remaining counts of the Second Superseding Indictment.

        The Court **grants** Defendant Cuciniello's Motion for Acquittal (Dkt. 937) as to Counts 4, 6, 21 and 24, and **denies** the Motion as to the remaining Counts.

II.   Defendant Tyrrell

        As to Defendant Tyrrell, the United States of America concedes that insufficient evidence has been presented to sustain a conviction as to Counts 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 21, 24, 25, 26, 27, 28, 29, 30 and 31.

Case No. 8:02-CR-111-T-17MAP

The United States of America argues that as to the remaining counts, sufficient evidence has been presented to sustain a conviction.

At oral argument, Defendant Tyrrell argued that there is a complete lack of evidence that Defendant Tyrrell knew of the illegal nature of any conduct at the time it was engaged in, and a complete lack of evidence that Defendant Tyrrell willfully joined in the conduct.  Defendant Tyrell relies on U.S. v. Parker, 839 F.2d 1473 (11th Cir. 1988).

To support a conspiracy conviction, the government must prove: 1) an agreement to commit an unlawful act and 2) an overt act by one of the conspirators in furtherance of the conspiracy. Conspiracy to defraud may be inferred from the actions of the actors or by the circumstantial evidence of a scheme.  The evidence must be sufficient to establish a meeting of the minds to commit an unlawful act.

The Court has reviewed the trial testimony of Robert M. Phillips, who describes how Defendant Tyrrell became associated with Stonehedge Group.  Robert M. Phillips testified:

    1.   That Robert Phillips entered into a contractual
    relationship with Stonehedge Group, and had a group of
    associates who sold Stonehedge products;

    2.   That he earned an override on what his associates sold.

    3.   That even though his override was called a referral
    fee, Robert Phillips knew it was a commission.

    4.   That both Gregory Schultz and Joe Cuciniello
    instructed him not to use the term "commission."

3

Case No. 8:02-CR-111-T-17MAP

5.   That Phillips's override resulted in a total "referral fee" of 25% to 27% on each purchase;

6.   That shares of Stonehedge Group were also issued to Robert Phillips to compensate him;

8.   that after Joe Cuciniello complained of lost business opportunities in Fall, 1998 due to lack funds, Phillips attempted to recruit "master contractors," and recruited Gene Tyrrell;

9.   That Gene Tyrrell entered into a contractual relationship with Stonehedge similar to that of Robert Phillips;

10.   that Gene Tyrrell played the same role that Robert Phillips did, but on a much larger scale.

11.   That monthly revenues increased from 30,000 or 50,000 per month to 1,000,000 per month after Gene Tyrrell contracted with Stonehedge.

12.   That both Robert Phillips and Gene Tyrrell appeared at seminars, and Gene Tyrrell placed ads to recruit additional agents.

13.   That Gene Tyrrell put together a training manual covering all aspects of sales, which was encyclopedic in nature.

14.   That Gene Tyrell was described in the seminar literature as trained in all aspects of the IPO program, including contracting questions, marketing fees, recruiting seminars, tax issues and sales.

15.   That in early Fall, 1999, there was an inquiry by the SEC which was handled by Gregory Schultz, which did not result in a cease and desist order being issued;

16.   That thereafter the Comptroller's office sent questionnaires to all agents;

17.   That after the entry of the TRO in Florida on October 27, 1999, Gene Tyrrell continued to do business and to pay Robert Phillips overrides for a period of time, since his business was not conducted in Florida.

4

Case No. 8:02-CR-111-T-17MAP

In this case there is no direct evidence that Defendant
Tyrrell knowingly joined a fraudulent scheme.  However, a
conspiracy by its nature is secretive and requires the finder of
fact to infer its existence from the surrounding circumstances.
Defendant Tyrrell never made a sale, but he knowingly collected
overrides from agents he recruited who did, and those commissions
were in excess of what the offering documents stated.  Defendant
Tyrrell continued to do business after the State of Florida
intervened.  The Court concludes that this case is more like <u>U.S</u>
<u>v. Simon</u>, 839 F.2d 1461 (11th Cir. 1988) than <u>U.S. v. Parker</u>,
<u>supra</u>.  It is not necessary to prove that each defendant knew all
of the details or participated in every aspect of the charged
conspiracy.  Once the existence of a conspiracy is established,
only slight evidence is necessary to connect a particular
defendant to the conspiracy.  After considering the documentary
evidence and the testimony of witnesses, the Court finds that
there is sufficient evidence to deny the Motion for Judgment of
Acquittal as to the remaining Counts.

The Court **grants** Defendant Tyrrell's Motion for Acquittal
(Dkt. 938) as to Counts 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 21,
24, 25, 26, 27, 28, 29, 30, 31, and **denies** the Motion as to the
remaining Counts.

III.  Defendant Sinibaldi

As to Defendant Sinibaldi, the United States of America
concedes that there is insufficient evidence to sustain a
conviction as to counts 4, 6 and 21.

Case No. 8:02-CR-111-T-17MAP

     The United States of America argues that there is sufficient
evidence to sustain a conviction as to the remaining counts of
the Second Superseding Indictment.

     Defendant Sinibaldi argues that the United States has not
presented evidence sufficient to prove knowing and willful intent
to do something the law forbids, has not proven specific intent
to defraud, has not provided sufficient evidence to support a
conviction that an agreement to achieve an unlawful objective
existed, and that Defendant Sinibaldi knew about and voluntarily
participated in the conspiracy or that Defendant Sinibaldi
committed an overt act in furtherance of the conspiracy.
Defendant Sinibaldi also argues that there is insufficient
evidence to sustain a conviction for mail fraud as to numerous
individual investors, and for sale of unregistered securities.

     The Court recalls that Defendant Sinibaldi's statement of
August 6, 1999 was presented during the trial.  In the statement,
Defendant Sinibaldi denied ever receiving commissions or finders
fees (Exh. AR, p. 18).  Defendant Sinibaldi stated that he did
financial consulting and financial reviews, as well as marketing
work related to Investors Business Journal.  As an independent
entity, Delta Financial, Defendant Sinibaldi did consulting work
for Millennium.  Defendant Sinibaldi denied that money that he
received was based on the amount of sales (p. 24).  Defendant
Sinibaldi represented that he was paid on a "per project" basis,
based on verbal agreements with Gregory Schultz.

     Defendant Sinibaldi further testified that he was on the
Executive Committee of Millennium Investment, Inc. and Millennium
Investment, Inc. Trust, and had set up a local bank account (p.

6

Case No. 8:02-CR-111-T-17MAP

35) for Millennium Investment, Inc.  Defendant Sinibaldi was
authorized to disburse money from the account with telephone
authorization from Gregory Schultz.

Defendant Sinibaldi denied that he offered or sold
promissory notes in Millennium.  He admitted providing
individuals, including friends, relatives and prior customers,
with offering papers and memoranda on behalf of Millennium.
Defendant Sinibaldi contended that he conducted informative
seminars regarding estate planning (p. 31).

During his statement, Defendant Sinibaldi testified that,
being a member of the Executive Committee, he knew that
Millennium gave investors self-addressed, stamped envelopes with
the documents Millennium sent out, and it was standard procedure
for investors to return documents and forms to Millennium by mail
(pp. 50, 51).

Defendant Sinibaldi testified that even though he was a
member of the Executive Committee of both Millennium entities, he
did not know which entity was liable to the investors for the
note money (p. 53), could not explain the difference between the
two entities (p. 54), and did not know the functional differences
between the two entities.

In his statement, Defendant Sinibaldi further explained that
he left offering documents with his customers, and then would
return and fill out the papers in their presence, while asking
them questions.  Defendant Sinibaldi further denied that he was
the agent representing Millennium Investment, Inc. Trust (p. 60,
61).  Defendant Sinibaldi stated several times that he was not an

7

Case No. 8:02-CR-111-T-17MAP

agent, but was a member of the Executive Committee.  In his
capacity as member of the Executive Committee, Millennium sent
courtesy copies of letters relating to his customers to him (p.
67).  Defendant Sinibaldi specifically denied selling Millennium
products (p. 70), but only offered materials relating to
Millennium products to his customers.

     In this statement, Defendant Sinibaldi denied any knowledge
as to the Millennium investment of Mrs. Kelly Lavis, although a
letter to Gregory Schultz from Mrs. Lavis dated May, 1999 states
"Dean A. Sinibaldi sold me the investment and assured me under no
uncertain terms that my investment was safe and backed by the
Bank of Bermuda, Ltd." (p. 74).   The Court recalls that Mrs.
Lavis testified during the trial as to her investment in
Millennium through Defendant Sinibaldi.

     In his statement, Defendant Sinibaldi stated that he knew
Gregory Schultz for seven years (p. 78), and he knew that the
integrity of Mr. Schultz was very high, so he did not need to
check his background.

     Defendant Sinibaldi specifically denied any regular stream
of payments from Millennium to Delta or Delta to Millennium (pp.
85, 86).  Defendant Sinibaldi asserts that he had done marketing
work for companies such as Hydro-grow, Biogenetics and CNG.  He
also stated he did consulting work on Beverly Hills Limited and
Progressive Telecommunications, and was paid for marketing and
financial records and reviews (p. 87).  Defendant Sinibaldi
denied that he had any formal training in finance and accounting,
but analyzed the financial statements without such training, in
meetings with Gregory Schultz.

Case No. 8:02-CR-111-T-17MAP

At the close of the statement, Defendant Sinibaldi again
denied that he was paid a commission or finders fee or any fee
whatsoever for the sale of Millennium products to his customers
(p. 89).

The Court has also reviewed the Deposition of Dean A.
Sinibaldi, which was taken in the Pinellas County Circuit Court
case (Exh. BR), on May 8, 2000.

The Court notes that Defendant Sinibaldi did not complete
high school or college.  Defendant Sinibaldi testified that he
has sold cars, managed appliance stores, and has sold annuities,
life insurance and health insurance since 1984.   Defendant
Sinibaldi testified that his work for Millennium involved
performing due diligence on the companies Millennium intended to
take public.  He testified that he went to different entities,
looked at their financial records and the operation of the
businesses, and spent time with Mr. Schultz making
recommendations of his own opinion as to the companies.
Defendant Sinibaldi testified that he was paid on a "per project"
basis and part of his contract with Millennium was bringing
investors to Millennium (p. 56).  Defendant Sinibaldi testified
that he was well paid for his work in connection with performing
due diligence, and he "didn't want to be greedy" by collecting a
commission for investments in Millennium (p. 57).  Defendant
Sinibaldi further testified that he bought stock in a Beverly
Hills Limited, Hydrogrow, Biogenetics and Progressive
Telecommunications, companies in the  Millennium portfolio.

Case No. 8:02-CR-111-T-17MAP

A.  Conspiracy

     To support a conspiracy conviction, the government must
prove: 1) an agreement to commit an unlawful act and 2) an overt
act by one of the conspirators in furtherance of the conspiracy.
See U.S. v. Parker, 839 F.2d 1473 (11th Cir. 1988).  Conspiracy
to defraud may be inferred from the actions of the actors or by
the circumstantial evidence of a scheme.  The evidence must be
sufficient to establish a meeting of the minds to commit an
unlawful act.

     After considering the testimony of witnesses and the
documentary evidence in the light most favorable to the
Government, the Court concludes that there is sufficient evidence
to support a conviction for conspiracy.

     Defendant Sinibaldi denies that he sold Millennium
investments.  Various investors testified that Defendant
Sinibaldi sold them Millennium investments.  Defendant Sinibaldi
testified that he was highly compensated for performing due
diligence, work that he is not qualified to perform by education
or experience.  He denied receiving commissions for sale of
Millennium investments.  The jury could infer guilty knowledge
based on Defendant Sinibaldi's denial of his role as an agent of
Millennium.  Defendant Sinibaldi's statement reveals inside
information connecting Defendant Sinibaldi to Millennium.  It is
not necessary to prove that knew all of the details or
participated in every aspect of the charged conspiracy.  Once the
existence of a conspiracy is established, only slight evidence is
necessary to connect a particular defendant to the conspiracy.
After consideration, the Court concludes that there is abundant

                              10

Case No. 8:02-CR-111-T-17MAP

evidence connecting Defendant Sinibaldi to the conspiracy.

B.   Mail Fraud

        To support a conviction for mail fraud, the government must
prove: 1) participation in a scheme to defraud, and 2) that the
actor connected with the scheme used or caused use of the mails
in furtherance of the scheme.   See U.S. v. Haimowitz, 725 F.2d
1561, 1568-69 (11th Cir.), cert. denied, 469 U.S. 1072 (1984).

        The Court notes that in the evidence before the Court, the
files of some individual investors contain mailing envelopes with
postmarks attached to various documents.   The Court has already
found that there is sufficient evidence linking Defendant
Sinibaldi to the charged conspiracy.   In his statement, Defendant
Sinibaldi testified that it was "standard operating procedure"
for Millennium to communicate with investors using the mail (Exh.
AR, pp. 50, 51).   After consideration, the Court finds that there
is sufficient evidence to sustain a conviction for mail fraud.

C.   Other Counts

        The Court has found that there is sufficient evidence of
Defendant Sinibaldi's knowing and willful participation in a
scheme to defraud to sustain a conviction as to conspiracy and
mail fraud.   The remaining counts of the Second Superseding
Indictment involve aspects of the charged conspiracy.   The same
evidence of knowledge and willful participation suffices as to
the remaining counts.   After consideration of the testimony of
witnesses and the documentary evidence, and viewing that evidence
in the light most favorable to the Government, the Court finds

11

Case No. 8:02-CR-111-T-17MAP

that there is sufficient evidence to sustain a conviction for the
other Counts of the Second Superseding Indictment.

The Court **grants** the Motion for Acquittal (Dkt. 939) as to
Counts 4, 6 and 21, and **denies** the Motion for Acquittal as to the
remaining Counts.  Accordingly, it is

   **ORDERED** that:

   1.  Defendant Cuciniello's Motion for Acquittal and
Discharge (Dkt. 937) is **granted** as to Counts 4, 6, 21 and 24, and
otherwise **denied**.

   2.  Defendant Tyrrell's Motion for Acquittal (Dkt. 938) is
**granted** as to Counts 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 21,
24, 25, 26, 27, 28, 29, 30, 31 and otherwise **denied**.

   3.  Defendant Sinibaldi's Motion for Acquittal (Dkt. 939) is
**granted** as to Counts 4, 6, and 21, and otherwise **denied**.

   **DONE and ORDERED** in Chambers, in Tampa, Florida on this
18th day of April, 2005.

                        ELIZABETH A. KOVACHEVICH
                        United States District Judge

Copies to:
All parties and counsel of record

12